Nina Wasow – Cal. Bar No. 242047
Margo Hasselman – Cal. Bar No. 228529
LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
476 9th Street
Oakland, CA 94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
nwasow@lewisfeinberg.com
mhasselman@lewisfeinberg.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

ROGER A. MEYMAN AND KARI L. PICKERING, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE, LLC, and WELLS FARGO HOME MORTGAGE, INC.,

Defendants.

Case No. 14-cv-02355

**COMPLAINT**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Named Plaintiffs Roger A. Meyman ("Meyman") and Kari L. Pickering ("Pickering") and other members of the putative class are or were mortgagors whose mortgages are or were serviced during the relevant time period by Defendant Wells Fargo Bank, N.A. ("WFB," or the "Company"). Plaintiffs and absent class members have been damaged because WFB improperly charged for certain attorneys' fees related to their personal bankruptcy proceedings.

2. Plaintiffs' underlying loan documents would have allowed WFB to charge a

fee to defray the cost of foreclosing on their homes, but WFB did not demand full payment of Plaintiffs' loans or attempt to foreclose on their homes, and thus incurred no foreclosure costs. Nonetheless, it charged Plaintiffs fees that would have been permissible only in connection with a foreclosure. WFB was not entitled to any such fees merely because it took other steps related to the personal bankruptcies of Plaintiffs.

3. WFB did make certain bankruptcy filings on behalf of the entities holding the notes for Plaintiffs' loans (sometimes WFB itself, sometimes other entities, including a related company, Wells Fargo Home Mortgage, or "WFHM"), but the loan documents explicitly stated that if "the Note holder has *required [payment] immediately in full* . . . the Note holder will have the right to be paid back . . . for its costs and expenses in enforcing this Note." (emphasis added) The contractual language could not be any more clear: fees are allowed only if immediate payment in full on the note has been "required." Plaintiffs and the proposed class members have been harmed because they were charged fees absent any such demand.

## JURISDICTION AND VENUE

4. The Named Plaintiffs are, and at all times herein relevant have been, residents of the State of Minnesota and owners of real property in Minnesota.

5. On information and belief Defendant WFB is a "citizen" of South Dakota and WFHM is a "citizen" of California.

6. There is minimal diversity among and between the parties and the amount in controversy exceeds $5,000,000.

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

8. Venue in the United States District Court for the Northern District of California is proper under 28 U.S.C. § 1391 because Defendants maintain major operating facilities in and routinely conduct business in the State of California and this District, and thus can be said to "reside" in this District. In addition, on information and belief a substantial number of the events or omissions giving rise to the claims in this action occurred in the Northern District of California.

**PARTIES**

9. WFB is a national banking association, chartered under the laws of the United States of America. Its principal office is located in Ogden, Utah. It has major operational centers in Iowa and California. Its parent company, Wells Fargo & Company, is incorporated in the State of Delaware with offices located in San Francisco.

10. Defendant Wells Fargo Home Mortgage, Inc. is listed on the California Secretary of State's website as "merged out," and Defendant Wells Fargo Home Mortgage, LLC is listed as "active." The two entities are referred to herein collectively as "WFHM." Upon information and belief, these entities are for all intents and purposes the same and are both responsible for the conduct alleged herein. WFHM is a wholly owned subsidiary of Wells Fargo & Company, organized under the laws of the State of California. It operates and is licensed as a mortgage loan originator in numerous states, including but not limited to California and Minnesota.

11. In addition to operating as a bank, WFB also engages in the servicing of residential mortgage loans. It performs such services either in its own right as the mortgagee or on behalf of another lender, mortgagee, note owner, or note holder. Among the other entities on behalf of which it services residential mortgage loans is WFHM. The mortgage-related services WFB provides include, but are not limited to, the collection and distribution of payments of (1) interest, (2) principal, and (3) other fees and charges authorized by law or the terms of the subject mortgage. All or a portion of the sums collected inure to the benefit of WFB, and when WFB acts on behalf of WFHM, a portion inures to the benefit of WFHM.

12. Named Plaintiffs Roger A. Meyman ("Meyman") and Kari L. Pickering ("Pickering") ("Named Plaintiffs"), are residents of Minnesota. They have or had mortgages serviced by WFB, filed for bankruptcy, and were improperly charged attorneys' fees by WFB in connection with those bankruptcy proceedings.

**NATURE OF THE CASE**

13. Upon information and belief, if the mortgagor on a mortgage serviced by

WFB files for bankruptcy, the Company regularly assesses attorney's fees whenever it files either (1) a motion for lift stay in connection with a Chapter 7 proceeding, or (2) a claim in connection with a Chapter 13 proceeding. "Lift stay" refers to the procedure whereby a party with a security interest in property moves the bankruptcy court to lift the automatic stay of proceedings against the debtor. The granting of such a motion allows the security holder to commence foreclosure on the property, which otherwise would not be allowed.

14. The filing of a bankruptcy, in the absence of a lift of the automatic stay of collection actions against the debtor, effectively precludes a creditor from requiring immediate payment of the outstanding debt.

15. The underlying notes for many of the loans serviced by WFB, including those of the Named Plaintiffs, contain a clause permitting the imposition of attorney's fees only if, and upon the condition that, the current owner or servicer of the mortgage has required payment in full of the unpaid balance of the loan by the mortgagor.

16. Upon information and belief, WFB, without requiring the unpaid balance of loans to be paid immediately in full, regularly assessed and continues to assess such attorney's fees in connection with bankruptcies. WFB does so without seeking an order from the bankruptcy court permitting these fees and then adds them to the unpaid balance of the underlying loan.

17. Defendants' conduct results in unjust enrichment.

18. The conduct of WFB constitutes a breach of contract with the owners of the mortgages it services and, where WFB services mortgages it owns itself, a breach of its contracts with the debtors.

19. As a result of WFB's conduct regarding the assessment of attorney's fees, numerous persons, including the Named Plaintiffs, have been or may be induced or required to pay unlawful and/or excessive fees and interest, which amounts benefit WFB and in some cases WFHM.

20. As a mortgage loan servicer WFB may not collect or demand any sums of

money, such as attorney's fees, not actually due to the mortgagee or current holder of the note and mortgage being serviced. Such conduct constitutes an unfair or deceptive business practice in violation of 15 U.S.C. § 45(a) and Minn. Stat. § 58.13, Subd. 1(a)(5), (8) and (9) (actionable under Minn. Stat. §§ 58.18 and 8.31).

**THE NAMED PLAINTIFFS' TRANSACTIONS**

**Meyman**

21. On or about February 7, 2003, Meyman entered into a residential mortgage loan originated by WFHM.

22. WFHM is not a federal or state chartered bank, savings bank, or credit union.

23. In connection with the above-described mortgage transaction, Meyman executed a note that contained the following clause:

> If the Note holder has required me to pay immediately in full . . . the Note holder will have the right to be paid back by me for its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

24. Shortly after closing, the servicing of Meyman's loan was transferred by WFHM to WFB.

25. Meyman subsequently defaulted on loan payments and thereafter filed a Chapter 7 bankruptcy listing the loan as one of his debts.

26. On or about June 14, 2010 WFB, acting on behalf of WFHM, filed a motion for lift stay in bankruptcy court, which motion was granted on July 10, 2010. The order to lift stay did not address the issue of attorney's fees.

27. As a result of the lift stay order, WFB was left free to initiate collection procedures on the debt outside of the bankruptcy proceedings.

28. Thereafter, WFB demanded that Meyman bring the mortgage current (not payment in full) by paying an amount that was significantly less than the unpaid balance of the mortgage. Bringing the mortgage current in this fashion did not pay it off; rather, it allowed him to continue holding title to the property and to continue paying off his loan.

On information and belief, this resolution of his arrearage benefited Defendants precisely because it enabled them to avoid the costs of foreclosure (for which they nonetheless charged Meyman) and to avoid the potential for taking a loss on the loan at a foreclosure sale.

29. Included in the amount WFB demanded of Meyman to bring his mortgage current was a charge for attorneys' fees in the amount of $550.

30. On or about July 2010 Meyman paid WFB a sum to bring his mortgage current. The amount paid included the $550 charge for attorneys' fees.

31. At no time herein relevant has WFB, WFHM, or anyone acting on their behalf required the principal balance of the above described mortgage to be paid immediately in full.

**Pickering**

32. On or about June 24, 2003 Pickering entered into a residential mortgage loan originated by Ideal Financial Services, Inc. as the initial lender and immediately assigned to WFHM.

33. Neither Ideal Financial Services, Inc. nor WFHM is a federal or state chartered bank, savings bank, or credit union.

34. In connection with the above-described mortgage transaction, Pickering executed a note that contained the following clause:

> If the Note holder has required me to pay immediately in full . . . the Note holder will have the right to be paid back by me for its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

35. Thereafter, the servicing of Pickering's loan was transferred by WFHM to WFB. The result of these transfers was that WFHM and WFB were bound by the provisions of the note executed by Pickering and Ideal Financial Services, Inc.

36. Pickering subsequently defaulted on loan payments and thereafter filed a Chapter 13 bankruptcy listing the loan as one of her debts.

37. On or about August 16, 2011 WFB filed a claim in the bankruptcy

proceeding in the amount of $23,645.74, which claim included attorney's fees in the sum of $250. The $23,645.74 amount was significantly less than the unpaid balance of the mortgage because it was related to a proposed payment plan.

38. The $23,645.74 amount was included in the payment plan established in the bankruptcy, and its payment over time was a condition for avoiding foreclosure. Thus Pickering was effectively required to pay $250 in attorney fees, which payment inured to the benefit of WFB and WFHM. Again, Defendants avoided the cost of foreclosure and the potential for taking a loss on the loan at a foreclosure sale.

39. At no time herein relevant has WFB, WFHM, or anyone acting on their behalf required the principal balance of the above described mortgage to be paid immediately in full.

**CLASS ALLEGATIONS**

40. Named Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 on their own behalf and on the behalf of all other members of the classes described below.

41. Named Plaintiffs seek certification of the following classes

CLASS I:

All persons who:

(1) Entered into a mortgage loan transaction serviced by WFB evidenced by a note or mortgage that contained a clause reading substantially as follows:

> If the Note holder has required me to pay immediately in full . . .the Note holder will have the right to be paid back by me for its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

and,

(2) At any time after a date prior to the commencement of this action and within the applicable limitations period were subsequently (a) assessed attorneys' fees that Defendants claim to have incurred in

connection with a bankruptcy.

CLASS II.

All members of Class I whose mortgages cover property located in the state of Minnesota.

Employees, owners and officers of the Defendants are expressly excluded from both Class I and Class II.

42. On information and belief, the above-described conduct by or on behalf of Defendants took place pursuant to uniform Company policies and practices, loan forms, and other documents, and therefore resulted in harm to other members of the above described Classes similar to the harm suffered by Named Plaintiffs.

43. Upon information and belief, based on the number of mortgages purportedly serviced by WFB, the Classes are sufficiently numerous to support class certification. Detailed information on the size and composition of the Classes can be obtained through a review of public records and/or a review of WFB's records.

44. Named Plaintiffs' claims are typical of the claims of the Classes in that Named Plaintiffs and all Class I and Class II members were assessed attorneys' fees in connection with bankruptcies, which fees were not permitted by the underlying loan documents or by statute. Named Plaintiffs and other Class members are thus entitled to equitable relief declaring such fees uncollectible and enjoining any future attempts at collection.

45. To the extent Class I or Class II members actually paid or are paying the assessed amounts in installments, such members also have claims for damages. Named Plaintiffs have such claims.

46. Class II members, including Named Plaintiffs, have unique claims under Minnesota law, but also have Class I claims.

47. All Class members experienced the same wrongful conduct by Defendants or persons acting on Defendants' behalf or persons acting under their direction and/or control.

48. Named Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes and have retained counsel competent and experienced in class action and consumer litigation.

49. Common questions of law and fact exist as to all members of Class I and Class II, and these common questions predominate over any questions affecting solely individual Class members. Among the questions of law and fact common to the Classes are:

(1) Whether the underlying notes permitted Defendants to collect attorneys' fees without having demanded payment of the entire outstanding loan balance;

(2) Whether Defendants collected or attempted to collect attorneys' fees in excess of those permitted by the underlying note;

(3) Whether Named Plaintiffs and Class members are entitled to damages and/or equitable or declaratory relief, the appropriate measures of such damages, and the appropriate nature of equitable relief;

(4) Whether Defendants' conduct with regard to the collection of attorney's fees unjustly enriches Defendants; and

(5) For Class II, whether Defendants' conduct violates Minn. Stat. § 58.13 and is actionable under either Minn. Stat. § 58.18 or Section 8.31.

50. Class certification under Rule 23(b)(3) is appropriate because a class action is superior to other available methods for the fair and efficient adjudication of Defendants' uniform practices. Joinder of all Class members is impractical as a result of the large numbers of potential members and their geographic dispersion.

51. In addition, due to the vastly unequal market power between the parties, and the fact that many Class members are in ongoing lending relationships with Defendants, a class action may be the only way, as a practical matter, that Class members' claims will be adjudicated. Class members can be easily identified by a review of Defendants' records and their damages determined by reference to a common formula.

52. Certification is also appropriate under Rules 23(b)(1) and (2) because

prosecution of separate actions by individual Class members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for the Defendants, and because the Defendants have acted on grounds generally applicable to Class I and Class II. Declaratory and injunctive relief is thus appropriate.

53. Plaintiffs estimate that the total value of damages, including interest and equitable relief for the Class and Sub-Class, is in excess of $5,000,000.00.

**CAUSES OF ACTION**

**COUNT I**

**On behalf of all Plaintiffs and Class I Members Against All Defendants**

**UNJUST ENRICHMENT**

54. Plaintiffs incorporate by reference Paragraphs 1 through 17 and 19 through 53 as if fully set forth herein.

55. WFB when acting as a mortgage loan servicer may not collect from mortgagors any sums of money not actually due the current owner of the mortgage note under the terms of the mortgage, nor is there any valid contract authorizing such conduct.

56. WFB's conduct as described above is unlawful, contrary to public policy, and as such cannot support a valid contract to collect or assess attorney's fees.

57. As a result of the above described unlawful conduct, Plaintiffs and the members of the Classes described above have been damaged in the amount of all impermissible attorneys' fees paid or assessed against their loans together with any interest accruing thereon in an amount to be determined.

58. The circumstances surrounding the collection, receipt and retention of the attorney's fees and charges described above and the benefits derived therefrom by WFB and WFHM are unfair, unconscionable, inequitable and unjustly enrich the Defendants.

59. Plaintiffs and members of Class I are entitled to recover all sums by which WFB and WFHM have been unjustly enriched.

//

**COUNT II**

**On Behalf of All Plaintiffs and Class I Members Against All Defendants.**

**BREACH OF CONTRACT**

60. Plaintiffs incorporate by reference Paragraphs 1 through 16, 18, and 21 through 53 above as if fully set forth herein.

61. When Defendants service their own mortgages or mortgages originated by others the above-described conduct constitutes a breach of the contractual terms of the subject mortgages.

62. Plaintiffs and the members of Class I have suffered damages from Defendants' breach of contract, the precise amount of which are unknown at this time but believed in aggregate to exceed $5,000,000.

**COUNT III**

**On Behalf of Named Plaintiffs and All Class I Members Against All Defendants**

**CONVERSION**

63. Plaintiffs incorporate by reference Paragraphs 1 through 16, 19, and 21 through 53 above as if full set forth herein.

64. Upon information and belief, when servicing mortgages owned by third parties, WFB enters into servicing agreements which authorize it to collect, and WFB agrees to only collect, sums actually due and owing under the terms of the subject mortgage. WFB acts as the agent and fiduciary of such third parties and possesses no more rights than those acquired by the principal.

65. WFB may not collect any amounts on its own behalf, or on behalf of the holders of the loans it services, in excess of amounts the loan holder is actually permitted to collect under the applicable loan contracts.

66. WFB has collected or attempted to collect attorneys' fees which neither it, nor any third party note holders for whom it acts as servicer, is entitled either by law or contract.

67. The collection of such sums by the WFB, whether acting on its own behalf

or on behalf of third party note holders, constitutes conversion of the sums at issue.

68. Plaintiffs and absent members of Class I have suffered damages as a result of WFB's conversion, the precise amount of which is unknown at this time but believed in aggregate to exceed $5,000,000.

69. Plaintiffs and the members of Class I are entitled to equitable relief enjoining defendants from engaging in the above described conduct in the future and/or attempting in any manner to collect or assess the above described fees.

**COUNT IV**

**On Behalf of Plaintiffs and All Class II Members Against All Defendants**

**MINN. STAT. § 58.13**

70. This Count relates only to Class II.

71. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

72. Defendants' conduct as described above violates Minn. Stat. § 58.13, Subd. 1(a)(5), (8), and (9), which prohibit *inter alia* failing to comply with written contracts with borrowers and investors, violating any provision of state or federal law regulating mortgage loans, and making any false, misleading, or deceptive statements in connection with a residential loan.

73. As a result of the above-described conduct, Plaintiffs and members of Class II have been injured as a result of paying or having added to their mortgage balances illegal fees and/or fees not actually authorized by their contracts as well as interest on those fees all in a sum yet to be determined.

74. Plaintiffs and members of Class II are entitled to recover statutory liquidated damages pursuant to Minn. Stat. § 58.18, which provides that persons injured by a violation of Minn. Stat. § 58.13 may recover statutory liquidated damages equal to all closing costs on their mortgage, actual damages in a sum to be determined, costs and disbursements, and reasonable attorney's fees as determined by the Court.

75. Minn. Stat. § 58.18, Subd. 2 also defines WFB's conduct as a deceptive and

unlawful trade practice within the meaning of Minn. Stat. § 8.31 and actionable under Minn. Stat § 8.31, Subd. 3a.

76. WFB's conduct caused injuries to Plaintiffs and members of Class II as described above and continues to cause such injury to numerous absent class members. Named Plaintiff and members of Class II are therefore entitled to equitable relief declaring Defendants' conduct to be unlawful and enjoining defendants from engaging in the above described conduct in the future and/or attempting in any manner to collect or assess the above described fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and members of the putative Classes described above, respectfully request relief from this Court as follows:

(1) Certification of this case as a class action on behalf of the proposed classes and designation of Plaintiffs as class representatives and their counsel as class counsel;

(2) Judgment in favor of the Plaintiffs and members of Class I on Count I, finding Defendants' conduct to be a breach of its duties imposed by statute and to have unjustly enriched Defendants, and awarding damages to members of Class I in the amount of all excess charges paid as a result of such breach, plus interest;

(3) Judgment in favor of the Plaintiffs and members of Class I on Count II, finding Defendants' conduct to be a breach of contract and awarding damages to members of Class I in the amount of all excess charges paid as a result thereof plus interest;

(4) Judgment in favor of the Plaintiffs and members of Class I on Count III, declaring Defendant's conduct to be conversion, enjoining such conduct in the future, and awarding damages in the amount of all excess charges paid as a result thereof;

(5) Judgment in favor of the Plaintiffs and members of Class II on Count IV, finding Defendants' practices as described herein to violate Minn. Stat. § 58.13, enjoining such conduct in the future, and awarding Plaintiffs and members of Class II statutory and actual damages as set forth in Minn. Stat. § 58.18, plus interest;

(6) An award of prejudgment interest at the applicable rate;

(9) An award of costs and disbursements as well as a reasonable attorney's fee; and,

(10) Such other and further relief, including equitable relief, as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs and the Plaintiff Classes demand a jury trial in this action for all claims so triable.

Dated: May 21, 2014

**LEWIS, FEINBERG, LEE, RENAKER & JACKSON P.C.**
Margo Hasselman
Nina Wasow
476 9th Street
Oakland, California 94607
510-839-6824

*/s/ Nina Wasow*
Nina Wasow

**SCHAEFER HALLEEN, LLC**
Bert Black
Bryce M. Miller
Lawrence P. Schaefer
400 South 4th Street
Minneapolis, MN 55414
612-294-2600

**RICHARD J. FULLER ATTORNEY AT LAW**
Richard J. Fuller
400 South 4th Street
Minneapolis, MN 55414
612-315-2251

**RANDALL SMITH LAW OFFICE**
Randall Smith
842 Raymond Ave.
St. Paul, MN 55114
651-647-6250

**FRIEDMAN IVERSON**
David Friedman
509 First Ave. NE, Suite No. 2
Minneapolis, MN 55413
612-564-4025